## Hunt *v.* Unemployment Compensation Board of Review.

578

Argued January 11, 1973, before Judges CRUMLISH, JR., MENCER and ROGERS, sitting as a panel of three.

*Robert S. Glass,* for appellant.

*Sydney Reuben,* Assistant Attorney General, with him *J. Shane Creamer,* Attorney General, for appellee.

OPINION BY JUDGE CRUMLISH, JR., April 12, 1973:

This is an appeal from a decision and order of the Unemployment Compensation Board of Review denying claimant's application for benefits.

From April 1969 until May 13, 1970, the claimant, Bonita L. Hunt, was employed as a night-time desk clerk by Holiday Inn, Johnstown, Cambria County, Pennsylvania. On May 13, 1970, after an argument with her supervisor over alleged improper use of the telephone, she was discharged.

On May 14, 1970, she applied for unemployment compensation benefits. The Bureau of Employment Security issued a determination which denied benefits under Section 402(e) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P. L. (1937) 2897, as amended, 43 P.S. §802(e) which provides: "Any employee shall be ineligible for compensation for any week—(e) In which his unemployment is due to his discharge or temporary suspension from work for wilful misconduct connected with his work. . . ." Claimant filed an appeal and the referee, after hearing claimant, a witness for the claimant, and the employer, rendered a decision affirming the Bureau's ruling.

This decision was, in turn, appealed to the Unemployment Compensation Board of Review [Board] which remanded the case for further testimony. On August 13, 1970, a referee acting as a Board Hearing Officer, heard the same witnesses. The Board on September 30, 1970, modified the referee's original decision which had denied benefits under Section 402(e), 43 P.S. §802(e). It found that the claimant was not guilty of "wilful misconduct" as defined by Section 402(e), but concluded that she was ineligible for benefits because she did not meet the requirements of Section 401(d), 43 P.S. §801(d) which mandates that a claimant must be genuinely and realistically attached to the labor force and that her application for benefits was invalid within the meaning of Section 401(c), 43 P.S. §801(c).

Acting on a Request for Reconsideration by her counsel, the Board vacated its earlier decision and once again remanded for additional testimony. Additional testimony was taken at a hearing on November 12, 1970 and the Board reinstated its decision of September 30, 1970, thus denying the benefits sought.

From this last Order of the Board, claimant appeals to us.

The appellant (claimant) contends that the Board erred in its determination that she, a night-time desk clerk, also a trained nurse's aide, is not "available" for work within the meaning of §401(d) because family obligations restrict her working hours to evenings. In addition, she disputes the Board's conclusion that her application was invalid under §401(c).

We shall deal first with the erroneous contention that appellant's application was invalid.

An "application" for benefits is defined in §4(w)(1) of the Law, 43 P.S. §753(w)(1) as follows:

"A 'Valid Application for Benefits' means an application for benefits on a form prescribed by the department . . . by such individual, who . . . is qualified under the provisions of section four hundred and one (a), (b) and (d)."

Section 401(c), referred to by the Board as the pertinent section violated by the appellant's application, reads:

"Compensation shall be paid to any employee who is or becomes unemployed and who (c) Has made a valid application for benefits with respect to the benefit year for which compensation is claimed and has made a claim for compensation in the proper *manner* and on the *form* prescribed by the department." (Emphasis added.) 43 P.S. §801(c).

The Board interprets §4(w)(1) of the Law to require that any application must be in accordance with

the provisions of §401(a), (b) and (d). Therefore, because the Board has determined that the claimant is disqualified under §401(d), her application is invalid in that her claim was not made "in the proper manner and on the form prescribed by the department." Presumably then, if the Board had found that the appellant was "able and available for suitable work" as prescribed by §401(d), her application would have been valid.

The flaw in this circular reasoning is readily apparent. It is proper that the Unemployment Compensation Law require an application for compensation be in accordance with all its provisions, both substantive and procedural. But it is unrealistic for the Board to expect a claimant to foresee the Board's ultimate disposition of her claim and that in failing to do so she violates §401(c).

§401(c) is a procedural requirement calling for the use of proper forms when one applies for compensation. The Board's attempt to invest this section with substantive requirements is erroneous and is needless in arriving at a just adjudication.

We now turn to the substantial issue in dispute, i.e., was the appellant genuinely and realistically attached to the labor market under the provisions of Section 401(d), 43 P.S. §801(d). This section provides, in pertinent part:

"Compensation shall be payable to any employee who is or becomes unemployed, and who (d) Is able to work and available for suitable work: Provided, That . . . (3) and the claimant is actively seeking suitable work in accordance with such rules and regulations as the secretary may prescribe. This means that the claimant is demonstrating a bona fide attachment to the labor force by making an active search for work in a locality or localities where suitable work is nor-

mally available. Such rules and regulations shall consider the claimant's prospects of returning to work, the methods by which he normally obtains work, the past and probable future duration of his employment, the conditions of employment and unemployment prevailing in the locality and such other factors as the secretary considers pertinent . . . ."

Appellant was employed as a night-time desk clerk at the Holiday Inn in Johnstown, Pennsylvania. In addition, she was a trained nurse's aide. Appellant testified that at the time in question she was available only for evening work because she was unable to obtain the services of a day-time babysitter.[1] During the evening appellant's mother was available to attend the child.

The Board viewed this availability limitation as a disqualification under Section 401(d) and its requirement that a claimant, in order to benefit, must be genuinely and realistically attached to the labor market.

Availability for work means that a claimant must actually be and currently attached to the labor force. Under Section 401(d), it is sufficient if a claimant is able to do some kind of work and there is a reasonable opportunity for one to obtain work in the vicinity of

---

[1] Later testimony reveals that appellant's aunt is now available to care for the child during the daylight hours.

This evidence, however, has no bearing on the question at hand. Each week of unemployment is the subject of a separate claim, whose validity is determined by a consideration of conditions existing within that week. *Burger Unemployment Compensation Case*, 168 Pa. Superior Ct. 89, 77 A. 2d 737 (1951), *following Friel Unemployment Compensation Case*, 167 Pa. Superior Ct. 362, 75 A. 2d 7 (1950).

The decision here must be based on the facts relevant to the week ending May 27, 1970 and it is without doubt that at the time in question no one was available to care for the child during the daylight hours.

his habitation. *Quiggle Unemployment Compensation Case*, 172 Pa. Superior Ct. 430, 94 A. 2d 367 (1953); *Sturdevant Unemployment Compensation Case*, 158 Pa. Superior Ct. 548, 45 A. 2d 898 (1946).

We are cognizant of the well-established principle that a claimant may render himself unavailable for work by imposing conditions and limitations on employment availability. *Bernotas Unemployment Compensation Case*, 175 Pa. Superior Ct. 437, 106 A. 2d 638 (1954).

The question is however, does an examination of the factual posture reveal that claimant's self-imposed limitations or conditions of employment effectively remove him from the labor market. *Sturdevant Unemployment Compensation Case*, 158 Pa. Superior Ct. 548, 45 A. 2d 898 (1946).

In *Quiggle, supra,* our Superior Court held that a woman whose evening shift had been terminated and who subsequently refused a daylight shift because she had to care for her small child, was still "available" and attached to a labor market. Since she was willing to accept work on either the second and third shift where work opportunities normally existed for her services during the hours she was willing and able to accept work, claimant met the requirements of §401(d).

In the instant case, appellant, at the time in question could work only in the evening hours. She had been a night-time desk clerk and she was a qualified nurse's aide. At the hearing, appellant attempted to establish that a labor market in the evening hours did in fact exist for persons enjoying her skill and training.[2] But the Board failed to make a finding in deter-

---

[2] Appellant adduced testimony that various motels and hotels in and around Johnstown employ clerks around the clock. Also testimony was placed on the record that nurse's aides are likewise employed throughout the day and night.

584

mination of appellant's contention that there was an existing labor market for her services and a reasonable opportunity for securing such work in the vicinity in which she lives. Because this is so vital to a just determination of the claim, a finding of fact must be made. So, notwithstanding the regrettable delay in the administrative and judicial process, we remand the record for such a finding. *Shay Unemployment Compensation Case,* 177 Pa. Superior Ct. 294, 111 A. 2d 174 (1955).

ORDER

AND NOW, this 12th day of April, 1973, the **record** is remanded to the Unemployment Compensation Board for proceedings consistent with this opinion.

---

The fact that the appellant has not been able to obtain employment in this proposed labor market does not affect her availability. That a labor market normally existed for claimant's skills and training is sufficient. That a market is temporarily depleted due to a labor depression, is immaterial. *Quiggle, supra.*